JOHNSON & PHAM, LLP
Christopher Q. Pham, SBN: 206697
    E-mail: cpham@johnsonpham.com
Nicole L. Drey, SBN: 250235
    E-mail: ndrey@johnsonpham.com
Hung Q. Pham, SBN: 276613
    E-mail: ppham@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:   (818) 888-7544

Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>LAST CHANCE BUYS, INC., a Florida Corporation; OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN, an Individual; and DOES 1-10, Inclusive,<br><br>        Defendants. | Case No.:  5:15-cv-05038<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT [15 *U.S.C.* § 1114 / *Lanham Act* §32(a)];**<br>**(2) FALSE DESIGNATION OF ORIGIN / FALSE OR MISLEADING ADVERTISING / UNFAIR COMPETITION [15 *U.S.C.* §1125(a) / *Lanham Act* §43(a)];**<br>**(3) TRADEMARK DILUTION [15 *U.S.C.* §1125(c)];**<br>**(4) FEDERAL COPYRIGHT INFRINGEMENT [17 *U.S.C.* §501(a)];**<br>**(5) UNLAWFUL / UNFAIR / FRAUDULENT BUSINESS PRACTICES [*California Business & Professions Code* §17200]; and**<br>**(6) BREACH OF CONTRACT [California Common Law]**<br><br>**[DEMAND FOR JURY TRIAL]** |

      COMES NOW, Plaintiff ADOBE SYSTEMS INCORPORATED hereby files its Complaint for Damages against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, inclusive (collectively "Defendants").

## PARTIES

1.      Plaintiff ADOBE SYSTEMS INCORPORATED (hereinafter "Plaintiff" or "Adobe") is now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in San Jose, California.

2.      Plaintiff is informed and believes that Defendant LAST CHANCE BUYS, INC. (hereinafter "LCB") is now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of Florida with its principal place of business in Beverly Hills, California.

3.      Plaintiff is informed and believes that, at the time of its creation, now, and at all times relevant to this Complaint, Defendant LCB did not and does not have sufficient funding to assume responsibility for its foreseeable and actual liabilities.

4.      Plaintiff is informed and believes that since the time of its creation, now, and at all times relevant to this Complaint, Defendant LCB was undercapitalized.

5.      Plaintiff is informed and believes that since the time of its creation, now, and at all times relevant to this Complaint, Defendant LCB has failed to observe corporate formalities required by law.

6.      Plaintiff is informed and believes that Defendant OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN (hereinafter "AJIBOYE") is an Individual residing in Santa Clarita, California. Plaintiff is informed and believes that Defendant AJIBOYE is an owner, operator and director of Defendant LCB. Plaintiff is informed and believes that Defendant AJIBOYE supervised, monitored, directed, authorized and ratified the actions of Defendant LCB complained of herein.

7.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

COMPLAINT FOR DAMAGES

8.     Plaintiff further alleges that Defendants LCB, AJIBOYE, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible with the named Defendants upon the causes of action hereinafter set forth.

9.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants LCB and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION

10.     This Court has federal subject matter jurisdiction over this matter pursuant to 28 *U.S.C.* §§1331 and 1338 (a) and (b), in that the case arises out of claims for trademark infringement, false designation of origin / false or misleading advertising / unfair competition, and dilution under the *Lanham Act* (15 *U.S.C.* §1051 *et seq.*), and copyright infringement under 17 *U.S.C.* §501(a).  This Court has supplemental jurisdiction pursuant to 28 *U.S.C.* §§1367(a) and 1338 (a) and (b).

11.     Venue is proper, *inter alia*, pursuant to 28 *U.S.C.* §1391(b), because on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and has caused damages to Plaintiff in this district.

12.     Personal jurisdiction exists over Defendants because on information and belief, Defendants reside in California, conduct business in California and in this judicial district, have purposefully directed action to California and this judicial district, and/or have otherwise availed themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

13.     This Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement and unfair competition in this district and/or Defendants have sufficient minimum contacts with this district such that the exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice. Among other things, Defendants have advertised, offered to sell and sold unauthorized and/or

counterfeit software products that infringe the trademarks and copyrights of Plaintiff using an interactive Internet website and knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase said unauthorized and/or counterfeit goods from Defendants, believing them to be authorized goods manufactured and distributed by Plaintiff or its authorized distributors.

14.     Moreover, Defendant LCB entered into an Adobe Partner Connection Program Reseller Agreement ("APCPRA") with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. Through the APCPRA, the Parties contractually consented to jurisdiction and venue in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

15.     Pursuant to Rule 3-2(c) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Civil L.R.") and the Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district-wide basis.

16.     Assignment to the San Jose Division would nonetheless be appropriate, pursuant to Civil L.R. 3-2(e), because a substantial part of the events that give rise to Plaintiff's claims against Defendants occurred in Santa Clara County, California, where Plaintiff's principal place of business is located.

## GENERAL ALLEGATIONS

### Plaintiff and its Famous ADOBE® Software Products

17.     Plaintiff is a global leader in developing and distributing innovative computer software.  Its products and services offer developers and enterprises tools for creating, managing, delivering and engaging with compelling content across multiple operating systems, devices and media.  The software industry is competitive, and Plaintiff undertakes great expense and risk in conceiving, developing, testing, manufacturing, marketing, and delivering its software products to consumers.  Software piracy undermines Plaintiff's investment and creativity, and misleads and confuses consumers.

**COMPLAINT FOR DAMAGES**

18.     The success of Plaintiff's ADOBE®, ACROBAT®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CREATIVE CLOUD®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SITECATALYST®, SPEEDGRADE® and VERSION CUE® products and services, among others (collectively referenced and referred to herein as "Adobe-Branded Software"), is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through Plaintiff's websites, print and other Internet-based advertising, among other efforts.  Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Adobe-Branded Software and the associated marks thereto.

19.     The success of the Adobe-Branded Software, and other products and services related thereto, is not due to Plaintiff's promotional efforts alone.  Rather, the popularity of Adobe-Branded Software is also due in part to consumers and the word of mouth buzz consumers have generated.

20.     As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the promotion and word of mouth buzz, Adobe-Branded Software and the associated marks thereto have been prominently placed in the minds of the public.  Consumers, purchasers and members of the public have become familiar with Plaintiff's software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.  Indeed, Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world and have acquired secondary meaning in the minds of consumers.

21.     While Plaintiff has gained significant common law trademark and other rights in its Adobe-Branded Software through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

22.    Plaintiff has secured registrations for its ADOBE®, ACROBAT®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CREATIVE CLOUD®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SITECATALYST®, SPEEDGRADE®, VERSION CUE® and various design trademarks, among others, with the United States Patent and Trademark Office. A non-exhaustive list of Plaintiff's trademark registrations is attached hereto as **Exhibit A** (collectively referenced and referred to herein as "Plaintiff's Trademarks").

23.    Similarly, Plaintiff's Adobe-Branded Software is copyrightable subject matter, and Plaintiff has secured copyright registrations for various versions of its ACROBAT©, AFTER EFFECTS©, AUDITION©, BRIDGE©, CREATIVE SUITE©, DEVICE CENTRAL©, DREAMWEAVER©, ENCORE©, EXTENSION MANAGER©, FIREWORKS©, FLASH PROFESSIONAL©, FLASH CATALYST©, ILLUSTRATOR©, INDESIGN©, LIGHTROOM©, MEDIA ENCODER©, ONLOCATION©, PHOTOSHOP©, PRELUDE©, PREMIERE©, SPEEDGRADE© and VERSION CUE© software, among others, with the United States Copyright Office. A non-exhaustive list of Plaintiff's copyright registrations is attached hereto as **Exhibit B** (collectively referenced and referred to herein as "Plaintiff's Copyrights").

### Plaintiff's Licensing Restrictions

24.    As part of its international licensing and distribution programs, Plaintiff imposes various restrictions on the distribution of all ADOBE® software, including Adobe-Branded Software. Every piece of Adobe-Branded Software is licensed. Every distribution agreement entered into by Plaintiff clearly states that all Adobe-Branded Software is subject to a license, and anyone obtaining any Adobe-Branded Software is only granted a license, pursuant to Plaintiff's Software License Agreement ("SLA"). Plaintiff maintains title to the Adobe-Branded Software at all times and at no point does it transfer any ownership of title. Each and every piece of Adobe-Branded Software is subject to numerous restrictions on use, location of distribution, transfer, and even who is qualified to obtain the product, in certain circumstances.

25.    One specific type of licensed Adobe-Branded Software is volume-licensed software. To better serve its organizational clients that require multiple copies of the same software for multiple users, Plaintiff has developed various programs, including the Transactional Licensing Program ("TLP"), through which an organization may purchase a piece of Adobe-Branded Software and activate it on multiple computers, simply paying an additional fee (often discounted from the full retail price) for each additional license. These licenses, however, are limited to users or machines within the same organization. These licenses are not to be sold to individuals.

26.    Academic or Educational ("EDU") versions of Adobe-Branded Software are offered at a steep discount and are intended only for students or individuals associated with educational institutions.  There are restrictions on the number of copies of EDU software one user can acquire, and a customer must provide certain proof of qualification as an EDU software user.  EDU software is not intended for general, commercial distribution, and only specified resellers are allowed to distribute EDU software.  EDU software may not be resold, pursuant to Plaintiff's SLA.  EDU software may differ from retail products in functionality, including offering personalized tutorials and instruction.

27.    Plaintiff distributes its Adobe-Branded Software through physical products as well as Electronic Software Downloads ("ESD").  A reseller must be specifically authorized by Plaintiff to sell ESD versions of Plaintiff's software products or else the product is unauthorized.

### Plaintiff's "Adobe Partner Connection Reseller Program"

28.    Plaintiff is aware that its customers rely on software resellers to provide them not only with products but also with dependable, reliable and competent advice on the features and benefits of Adobe-Branded Software products and on their specific suitability to address business challenges.

29.    Defendant LCB entered into an APCPRA with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. A true and correct copy of the confidential terms of the APCPRA between Plaintiff and LCB will be attached hereto as **Exhibit C** upon the Court's granting of an order to file under seal.

**COMPLAINT FOR DAMAGES**

30.     LCB has breached the terms of the APCPRA by: (i) ordering Adobe-Branded Software products from unauthorized distributers; (ii) offering for sale, selling, and distributing unauthorized TLP software licenses; (iii) offering for sale, selling, and distributing licenses for counterfeit and/or unauthorized EDU software products; and (iv) offering for sale, selling, and distributing ESD products without a license.

31.     On October 8, 2015, LCB's APCPRA with Adobe was terminated due to LCB's infringing conduct and breach of the terms of the APCPRA.

### Defendants' Wrongful and Infringing Conduct

32.     Particularly in light of the success of Plaintiff and Plaintiff's products as well as the reputation they have gained, Plaintiff and its well-recognized products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and fame Plaintiff has spent considerable effort to build up in its products and marks and the works embodied in Plaintiff's software products.

33.     A large number of individuals and entities deal in unauthorized, pirated and/or counterfeit Adobe-Branded Software products and other products and services, including but not limited to the famous ADOBE®, ACROBAT®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, BRIDGE©, CREATIVE CLOUD®, CREATIVE SUITE®, CS LIVE®, DEVICE CENTRAL©, DREAMWEAVER®, ENCORE®, EXTENSION MANAGER©, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FLASH PROFESSIONAL©, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, MEDIA ENCODER©, ONLOCATION©, PHOTOSHOP®, PRELUDE®, SITECATALYST®, SPEEDGRADE®, and VERSION CUE® products.    Their actions vary and include manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing counterfeit and/or otherwise unauthorized Adobe-Branded Software products.

34.     Plaintiff investigates and enforces against such activity and through such efforts learned of Defendants and Defendants' actions advertising, importing, exporting, selling and/or distributing infringing Adobe-Branded Software products within the United States.  Defendants own and operate an interactive Internet website located at www.lastchancebuys.com (referenced

and referred to herein as the "Website"), offering for sale various software products, including altered, unauthorized and/or counterfeit Adobe-Branded Software products. Defendants have also used eBay, exporters.sg and/or other online platforms to advertise and/or distribute their unauthorized Adobe-Branded Software products.

35.     Plaintiff has never authorized or consented to Defendants' use of Plaintiff's Trademarks, or any confusingly similar mark, or Plaintiff's Copyrights outside of the use allowed in the APCPRA and SLA.  Specifically, Plaintiff has never authorized Defendants to manufacture, copy, unbundle, or alter any of Plaintiff's Copyrights or use any of Plaintiff's Trademarks on or in connection with such manufactured, copied, unbundled, or altered Adobe-Branded Software.

36.     Defendants offer for sale, sell, and/or distribute counterfeit copies of Adobe-Branded Software. Defendants are not authorized under either the APCPRA or the SLA to manufacture copies of Adobe-Branded Software or to use Plaintiff's Trademarks or Copyrights in connection with products not specifically manufactured by Plaintiff or one of its licensees.

37.     Defendants offer for sale, sell, and/or distribute TLP copies of Adobe-Branded Software outside of the licensing restrictions on TLP products. Specifically, Defendants have sold and/or distributed TLP products to individuals who are not qualified to purchase TLP versions of Adobe-Branded Software. Defendants have also sold and/or distributed the TLP serial numbers for Adobe-Branded Software that have already been registered to other unaffiliated users.

38.     Defendants are not authorized distributors and/or resellers of EDU copies of Adobe-Branded Software, nor does the APCPRA or the SLA grant Defendants such right. Defendants offer for sale, sell, and/or distribute unauthorized EDU copies of Adobe-Branded Software, without a license and outside of the scope of Plaintiff's licensing restrictions, to resellers and end users in the United States and within this judicial district.

39.     Defendants are not authorized distributors and/or resellers of ESD copies of Adobe-Branded Software, nor does the APCPRA or the SLA grant Defendants said right.

Defendants offer for sale, sell, and/or distribute ESD copies of Adobe-Branded Software, without a license, to resellers and end users in the United States and within this judicial district.

40.     On or about December 5, 2013, Plaintiff's investigator purchased a purported "ADOBE ACROBAT X PROFESSIONAL – PC" from Defendants' website located at www.lastchancebuys.com for a cost of $198.95. On or about December 18, 2013, Plaintiff's investigator received a package pursuant to this order with a return address of "LAST CHANCE BUYS, 8484 WILSHIRE BLVD STE 515, BEVERLY HILLS CA 90211-3235." The package contained a copy of Adobe Acrobat X Professional.

41.     Plaintiff has confirmed that the Adobe-Branded Software disc provided by Defendants pursuant to the December 5, 2013, order, is counterfeit and was not manufactured or authorized to be manufactured by Plaintiff. Additionally, the serial number affixed to the counterfeit product was for a stolen EDU TLP serial number that had already been registered multiple times by various users unaffiliated with Plaintiff's investigator or the original licensee of the product.

42.     On or about August 21, 2015, Plaintiff's investigator made a subsequent purchase from Defendants' website located at www.lastchancebuys.com for a purported "ADOBE CREATIVE SUITE (CS) 6 DESIGN & WEB PREMIUM – MAC" for $789.95. On or about August 27, 2015, Plaintiff received a package pursuant to this order with a return address of "LAST CHANCE BUYS, 8484 WILSHIRE BLVD STE 515, BEVERLY HILLS CA 90211-3235." The package contained a copy of Adobe Creative Suite 6 Design & Web Premium.

43.     Plaintiff has confirmed that the Adobe-Branded Software disc provided by Defendants pursuant to the August 21, 2015, order, is counterfeit and was not manufactured or authorized to be manufactured by Plaintiff. Additionally, the serial number affixed to the counterfeit product was for another stolen EDU TLP serial number that had already been registered multiple times by various users unaffiliated with Plaintiff's investigator or the original licensee of the product.

44.     It has thus become apparent to Plaintiff, upon information and belief, that Defendants are engaged in an ongoing piratical concern whose primary business consists of

systematically infringing upon Plaintiff's Trademarks and Copyrights in order to generate substantial illegal revenues. Indeed, on information and belief, Defendants sought a reseller designation for LCB from Plaintiff through the negotiation of an APCPRA while engaged in activities infringing upon Plaintiff's intellectual property rights, for the purpose of appearing legitimate to consumers despite said ongoing and willful infringing activities, and without any intention of abiding by the reseller agreement.

45.     By these sales and on information and belief, Defendants have imported, advertised, marketed, offered for sale, sold and distributed numerous counterfeit and/or unauthorized Adobe-Branded Software products that infringe on Plaintiff's Trademarks and Copyrights, resulting in thousands if not millions of dollars in ill-begotten gains from Defendants' infringement. Defendants' other numerous dealings in counterfeit and/or unauthorized product (including importing, advertising, displaying, distributing, selling and/or offering to sell counterfeit and/or unauthorized product) violate Plaintiff's exclusive rights in Plaintiff's Copyrights and use images and marks that are confusingly similar to, identical to, and/or constitute counterfeit reproductions of Plaintiff's Trademarks to confuse consumers and aid in the promotion and sales of Defendants' unauthorized product.

46.     Defendants' conduct and use began long after Plaintiff's adoption and use of its ADOBE®, ACROBAT®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, BRIDGE©, CREATIVE CLOUD®, CREATIVE SUITE®, CS LIVE®, DEVICE CENTRAL©, DREAMWEAVER®, ENCORE®, EXTENSION MANAGER©, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FLASH PROFESSIONAL©, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, MEDIA ENCODER©, ONLOCATION©, PHOTOSHOP®, PRELUDE®, SITECATALYST®, SPEEDGRADE®, VERSION CUE® and various design trademarks, after Plaintiff obtained the copyright and trademark registrations alleged above, and after Plaintiff's Trademarks became famous.  Indeed, Defendants had knowledge of Plaintiff's ownership of the Trademarks, and of the fame in such Trademarks, prior to the actions alleged herein and adopted them in bad faith and with intent to cause confusion and dilute Plaintiff's Trademarks.  Defendants also had knowledge of Plaintiff's ownership of its Copyrights and

copied, imported, offered for sale, sold, and/or distributed unauthorized copies of the Copyrights in order to illegally profit from Plaintiff's Copyrights.

47.   Defendants' actions were committed with full knowledge that their conduct constituted infringement of Plaintiff's Trademarks and Copyrights.  On information and belief, Defendants were informed by their customers on numerous occasions that Defendants' products were unauthorized and that Defendants' resellers were being sued by Plaintiff for trademark and copyright infringement.

48.   Defendants' actions were committed in bad faith and with the intent to dilute Plaintiff's Trademarks, and to cause confusion, mistake or to deceive the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants and/or Defendants' counterfeit and unauthorized goods. By their wrongful conduct, Defendants have traded upon and diminished Plaintiff's goodwill.

49.   In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which has and will continue to cause irreparable harm to Plaintiff:  (i) infringed and diluted Plaintiff's rights in Plaintiff's Trademarks; (ii) infringed Plaintiff's Copyrights; (iii) applied counterfeit marks; (iv) misled the public into believing there is an association or connection between Defendants and Plaintiff and/or the products advertised and sold by Defendants and Plaintiff; (v) used false designations of origin on or in connection with its goods and services; (vi) committed unfair competition; and (vii) unfairly profited from such activity.  Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

**FIRST CAUSE OF ACTION**

**(Infringement of Registered Trademarks Against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, Inclusive)**

**[15 *U.S.C.* §1114/*Lanham Act* §32(a)]**

50.   Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-49.

51.   Plaintiff has continuously used Plaintiff's Trademarks in interstate commerce since at least as early as 1993.

52.     Plaintiff, as the owner of all right, title and interest in and to Plaintiff's Trademarks, has standing to maintain an action for trademark infringement under the Trademark Statute, 15 *U.S.C.* §1114.

53.     Defendants are, and at the time of their actions complained of herein were, actually aware that Plaintiff is the registered trademark holder of Plaintiff's Trademarks (*see* non-exhaustive list of Plaintiff's trademark registrations attached hereto as **Exhibit A**).

54.     Defendants did not and failed to obtain the consent or authorization of Plaintiff as the registered owner of Plaintiff's Trademarks to deal in and commercially distribute, market and sell Adobe-Branded Software products bearing Plaintiff's Trademarks into the stream of commerce.

55.     Defendants intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's registered marks in connection with the sale, offering for sale, and/or distribution of Defendant's software products by importing, offering, advertising, promoting, retailing, selling, and/or distributing counterfeit and/or unauthorized copies of Adobe-Branded Software bearing Plaintiff's Trademarks.

56.     Defendants reproduced, counterfeited, copied, and colorably imitated Plaintiff's Trademarks and applied such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising of goods.  Defendants thereupon imported, offered, advertised, promoted, retailed, sold, and/or distributed counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

57.     Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized items bearing Plaintiff's Trademarks is likely to cause confusion or mistake, or to deceive, mislead, betray, and defraud consumers who believe that items being offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff.

58.     Defendants' acts have been committed with knowledge of Plaintiff's exclusive rights and goodwill in Plaintiff's Trademarks.  Defendants' acts have been committed with

knowledge that their conduct infringes Plaintiff's rights in Plaintiff's Trademarks.  Defendants have acted willfully, in bad faith, and with the intent to cause confusion, mistake or to deceive.

59.     Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to Plaintiff's Trademarks and the goodwill associated therewith, for which it has no adequate remedy at law.  Thus, Plaintiff requests injunctive relief, including but not limited to preliminary relief.

60.     Defendants' continued and knowing use of Plaintiff's Trademarks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the *Lanham Act*, 15 *U.S.C.* §1114.  Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by sections 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## SECOND CAUSE OF ACTION

**(False Designation of Origin / False or Misleading Advertising / Unfair Competition Against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, Inclusive)**

**[15 *U.S.C.* §1125(a)/*Lanham Act* §43(a)]**

61.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-60.

62.     Plaintiff, as the owner of all common law right, title, and interest in and to Plaintiff's Trademarks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, *Lanham Act* §43(a) (15 *U.S.C.* §1125). Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness.

63.     Defendants have, without authorization, on or in connection with their goods and services, used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or have made false designations of origin which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff and/or as to the origin, sponsorship or approval of Defendants' goods or services or commercial activities.

64.     Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured Plaintiff and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial. Defendants' actions are causing and will continue to cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of Plaintiff's Trademarks.

65.     On information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or deception, all in blatant disregard of Plaintiff's rights.

66.     Defendants knew or, by the exercise of reasonable care, should have known that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to and constitute a counterfeit reproduction of Plaintiff's Trademarks would cause confusion, mistake, or deception among purchasers, users and the public.

67.     Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks unfairly competes with Plaintiff and is likely to cause confusion, mistake or to deceive, mislead, betray, and defraud consumers to believe that Defendants' unauthorized products are genuine, authorized Adobe-Branded Software.

68.     Defendants' continuing and knowing use of Plaintiff's Trademarks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 *U.S.C.* §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

69.     Defendants' wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its marks as commercial assets in an amount as yet unknown but to be determined at trial.

1    Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff

2    three times that amount in the Court's discretion.

3         70.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief,

4    including but not limited to preliminary relief, as well as monetary damages and other remedies

5    as provided by the *Lanham Act*, including Defendants' profits, treble damages, reasonable

6    attorneys' fees, costs and prejudgment interest.

7                                **THIRD CAUSE OF ACTION**

8         **(Dilution Against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE**

9              **a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, Inclusive)**

10                                **[15 *U.S.C.* §1125(c)]**

11        71.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-70.

12        72.    Plaintiff's Trademarks are distinctive and famous within the meaning of the

13   *Lanham Act*.

14        73.    Upon information and belief, Defendants' unlawful actions began long after

15   Plaintiff's Trademarks became famous, and Defendants acted knowingly, deliberately and

16   willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's

17   Trademarks.  Defendants' conduct is willful, wanton and egregious.

18        74.    Defendants' intentional sale of counterfeit and/or unauthorized software bearing

19   Plaintiff's Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and

20   defraud consumers to believe that Defendants' substandard and/or limited software are

21   authorized, full retail versions of Adobe-Branded Software.  The actions of Defendants

22   complained of herein have diluted and will continue to dilute Plaintiff's Trademarks and are

23   likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the

24   business reputation of Plaintiff and its marks.

25        75.    Defendants' acts have caused and will continue to cause Plaintiff irreparable

26   harm.  Plaintiff has no adequate remedy at law to compensate it fully for the damages that have

27   been caused and which will continue to be caused by Defendants' unlawful acts, unless they are

28   enjoined by this Court.

76.    As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 *U.S.C.* §1125(c), Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies provided by 15 *U.S.C.* §§1116, 1117, 1118, and 1125(c), including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

**FOURTH CAUSE OF ACTION**

**(Federal Copyright Infringement Against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, Inclusive)**

**[17 *U.S.C.* §501(a)]**

77.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-76.

78.    Plaintiff is the exclusive owner of copyrights in the Adobe-Branded Software along with images and other protectable works related thereto and possesses copyright registrations with the United States Copyright Office relating to the same.

79.    Defendants did not seek and failed to obtain Plaintiff's consent or authorization to import, utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's copyright-protected materials.

80.    Without permission, Defendants intentionally and knowingly reproduced, counterfeited, copied, displayed, manufactured and/or distributed Plaintiff's protected works by importing, offering, advertising, promoting, retailing and/or selling counterfeit and/or unauthorized Adobe-Branded Software, which are, at a minimum, substantially similar to Plaintiff's Copyrights (*see* non-exhaustive list of Plaintiff's copyright registrations attached hereto as **Exhibit B**).

81.    Defendants' acts as alleged herein, constitute infringement of Plaintiff's Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

82.    Defendants' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff and has and will

17

**COMPLAINT FOR DAMAGES**

continue to cause damage to Plaintiff. Plaintiff is therefore entitled to injunctive relief, including but not limited to preliminary relief, as well as damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

## FIFTH CAUSE OF ACTION

**(Unlawful, Unfair, Fraudulent Business Practices Against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, Inclusive)**

**[*California Business & Professions Code §17200 et seq.*]**

83. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-82.

84. By marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks, Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of *California Business and Professions Code §17200 et seq*.

85. Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized Adobe-Branded Software is in violation and derogation of Plaintiff's rights and is likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public. Defendants' conduct was intended to cause such loss, damage and injury.

86. Defendants knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized product would cause confusion, mistake or deception among purchasers, users and the public.

87. By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized versions of Adobe-Branded Software bearing Plaintiff's

18

**COMPLAINT FOR DAMAGES**

Trademarks, Defendants intended to, did and will induce customers to purchase their products by trading off the extensive goodwill built up by Plaintiff in its marks.

88.    Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Plaintiff's rights.

89.    Defendants' wrongful conduct, as alleged above, has permitted and will permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of substantial sales of its products in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its trademarks as commercial assets, in an amount as yet unknown but to be determined at trial.  Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from their infringing activity, and Plaintiff's actual and/or compensatory damages.

90.    Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above.  Plaintiff seeks injunctive relief, including but not limited to preliminary relief.

91.    Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession that rightfully belong to Plaintiff.

### SIXTH CAUSE OF ACTION

**(Breach of APCPRA Contract Against Defendants LAST CHANCE BUYS, INC., and**

**DOES 1-10, Inclusive)**

92.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-91.

93.    Defendant LCB entered into an APCPRA with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. A true and correct copy of the confidential terms of the APCPRA between Plaintiff and LCB will be attached hereto as **Exhibit C** upon the Court's granting of an order to file under seal.

94.   The APCPRA provides clear and concise obligations and limitations regarding the acquisition, advertising, sale, and distribution of Adobe-Branded Software.

95.   Defendant LCB breached the APCPRA with Plaintiff by ordering Adobe-Branded Software products from unauthorized distributors; offering for sale, selling, and distributing licenses for counterfeit and/or unauthorized Adobe-Branded Software products; offering for sale, selling, and distributing EDU and ESD Adobe-Branded Software products; and offering for sale, selling, and distributing unauthorized TLP licenses for Adobe-Branded Software products.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff ADOBE SYSTEMS INCORPORATED prays for judgment against Defendants LAST CHANCE BUYS, INC., OLUWATOSIN AJIBOYE a/k/a ZOE AJIBOYE a/k/a ZOE AERIN and DOES 1-10, inclusive, and each of them, as follows:

A.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. §1114(a);

B.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

C.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

D.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. §1125(c);

E.  In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of Plaintiff's trademark pursuant to the Lanham Act, for statutory damages pursuant to 15 U.S.C. §1117(c), which election Plaintiff will make prior to the rendering of final judgment;

F.  In the alternative to actual damages and Defendants' profits pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 U.S.C. §504(c), which election Plaintiff will make prior to the rendering of final judgment;

G.  For restitution in an amount to be proven at trial for unfair, fraudulent and illegal

20
**COMPLAINT FOR DAMAGES**

business practices under *California Business and Professions Code* §17200;

H.  For consequential and compensatory damages;

I.  For damages to proven at trial for breach of the APCPRA contract [as to Defendant LCB only];

J.  For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any counterfeit and/or unauthorized product; the unauthorized use of any mark, copyright or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; acts of copyright infringement; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

K.  For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

L.  For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

M. For destruction of the infringing articles in Defendants' possession under 15 U.S.C. §1118 and 17 U.S.C. §503;

N.  For treble damages suffered by Plaintiff as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 U.S.C. §1117(b);

O.  For damages in an amount to be proven at trial for unjust enrichment;

P.  For Plaintiff's reasonable attorney's fees;

Q.  For all costs of suit; and

R.  For such other and further relief as the Court may deem just and equitable.

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2       Plaintiff ADOBE SYSTEMS INCORPORATED respectfully demands a trial by jury in

3   this action.

4   DATED:  November 3, 2015                     JOHNSON & PHAM, LLP

5

6                                               By: /s/ Christopher Q. Pham, Esq.
                                                Christopher Q. Pham, Esq.
7                                               Nicole L. Drey, Esq.
                                                Hung Q. Pham, Esq.
8                                               Attorneys for Plaintiff
                                                ADOBE SYSTEMS INCORPORATED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**